## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

---

MISSOURI CONFLUENCE WATERKEEPER, )
a Missouri non-profit organization, )
                              )
          Plaintiff, )
                              )     Civil Action No. 4:18-cv-00165
      vs. )
                              )
BYRNES MILL PROPERTY, LLC., )
a Delaware Limited Liability Company, and )
MOBILE HOME PARK INVESTMENTS, )
INC., an Illinois Corporation, )
                              )
          Defendants. )
                              )
                              )

---

## COMPLAINT

---

      Plaintiff Missouri Confluence Waterkeeper, by and through its undersigned counsel, hereby alleges and complains as follows:

### INTRODUCTION

1.     Missouri Confluence Waterkeeper ("MCW") and its members bring this action under the "citizen suit" provision of the Clean Water Act, 33 U.S.C. §1365(a)(1), against Byrnes Mill Property, LLC and Mobile Home Park Investments, Inc. (collectively "Byrnes Mill Farm" or "BMF" or "Defendants") for their ongoing, repeated, and unlawful discharges of toxic water pollutants into waters of the United States, including the Big River and one of its unnamed tributaries, in violation of the Clean Water Act and the terms and conditions of BMF's

COMPLAINT for Injunctive and Declaratory Relief                                   1

wastewater discharge permit. These violations have occurred and are occurring at the Defendants' mobile home park and related facilities located at 6856 River Creek Court, House Springs[1], Missouri 63051 ("Facility").

2.      As detailed below, BMF has regularly discharged Ammonia, Escherichia coli ("E.coli"), and biological oxygen demand ("BOD") at concentrations that far exceed the limitations set forth in the Facility's discharge permit issued to it by the State of Missouri pursuant to the National Pollutant Discharge Elimination System ("NPDES"). *See generally* 33 U.S.C. § 1342. These pollutants, both individually and collectively, are toxic to fish, invertebrates and other aquatic life that depend on Missouri's rivers and streams for food and habitat, and degrade the aesthetic and recreational benefits obtained by MCW's members and the general public from their use of the Big River.

3.      BMF has also regularly failed to conduct monitoring required by its NPDES Permit for various pollutants and parameters, and has failed to report the results of the required monitoring to the Missouri Department of Natural Resources ("MDNR") as required by its NPDES Permit. In addition, BMF has consistently failed to properly operate and maintain its Facility pursuant to the requirements of its NPDES permit.

4.      BMF's ongoing violations of the Clean Water Act have caused and, unless abated by an order of this Court, will continue to cause harm to MCW and its members who use and enjoy the Big River in areas near and downstream of where the violations take place. The overall mission of MCW is to promote and provide fishable, swimmable, and drinkable waters to the

---

[1] The mailing address for the facility is listed as being in House Springs, Missouri, however, the facility is actually located within the municipal jurisdiction of Byrnes Mill, Missouri.  Upon information and belief, the House Springs address is used due to postal office requirements.

public and its members, and BMF's consistent and unabated violations greatly compromise and undermine the efforts of MCW to achieve its mission on behalf of its members.

5.      Neither MDNR nor the U.S. Environmental Protection Agency ("EPA") has taken action to abate the violations alleged in this complaint. In fact, recent history suggests that MDNR has failed to take its enforcement responsibilities seriously with respect to BMF's continued NPDES permit non-compliance. Between August 2015 and December 2019, MDNR sent to BMF at least five (5) "Letters of Warning," at least two "Notices of Violation," and several other correspondence purporting to address some of the ongoing and pervasive violations alleged in this complaint, and yet these letters have failed to spur compliance by BMF, which continues to violate the effluent limitations and other conditions contained in its NPDES Permit. Citizen suit enforcement is proper in these circumstances. *See, e.g.*, *Concerned Citizens of Bridesburg v. City of Philadelphia*, 643 F. Supp. 713, 726 (E.D. Pa. 1986) (noting propriety of an injunction in a Clean Air Act citizen suit where "[r]epeated notices of violations" from the state agency "have been of little, if any, practical help in preventing further violations.").

6.      MCW seeks injunctive and declaratory relief under section 505(a) and (d) of the Clean Water Act, 33 U.S.C §§ 1365(a) and (d), to prevent further violations and harm to its members, the Big River, and the unnamed tributary to the Big River. Additionally, MCW seeks civil penalties for each of the violations described above pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as adjusted by 40 C.F.R. § 19.4, which provides for penalties of up to $37,500 per day for each violation before November 2, 2015 and up to $53,484 per violation per day that occurred after November 2, 2015. Finally, MCW will seek attorney fees and costs as authorized under the CWA, 33 U.S.C. § 1365(d), any such other relief as is permitted by law, and any other remedy this Court deems proper.

## JURISDICTION AND VENUE

7.      Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question jurisdiction) and 33 U.S.C. § 1365(a) (Clean Water Act citizen suit provision).

8.      Venue lies in the Eastern Division of the Eastern District of Missouri pursuant to 33 U.S.C. § 1365(c)(1) ,28 U.S.C. § 1391(b), and E.D.Mo. L.R. 2.07 because the events giving rise to the claims alleged herein occurred at the Facility, located in Jefferson County, Missouri, within this Eastern Division.

9.      Pursuant to section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), MCW notified BMF of its violations of the Act and of MCW's intent to sue under the Act by letter dated and postmarked October 23, 2019 ("Notice Letter"), copies of which were mailed to the Administrator of the EPA, the Regional Administrator of EPA Region 7, and the Director of MDNR. The Notice Letter is attached to this Complaint as Exhibit A, and is hereby incorporated by reference into this Complaint.

10.     More than sixty days have passed since MCW sent the Notice Letter.

11.     Neither the EPA nor MDNR has commenced or is diligently prosecuting an action against BMF to require compliance with the NPDES permit conditions forming the basis for the claims alleged in this complaint. *See* 33 U.S.C. § 1365(b)(1)(B).

## PARTIES

12.     MCW is a tax-exempt, non-profit organization with offices at 121 W. Adams Ave., St. Louis, Missouri 63122. Since 2017, MCW has been committed to protecting and restoring Missouri's many waterways, from various sources of industrial and domestic pollution. The pollutant discharges that BMF releases into the Big River and its tributary are of the type

that the organization's members are interested in preventing to achieve their mission of protecting and restoring the environment.

13.     MCW has members who live, work, or recreate on or near the Big River in the vicinity of the Facility, including areas affected by the pollution that violates BMF's NPDES Permit. These members enjoy boating, canoe racing, kayaking, paddle-boarding, wildlife observation, and other recreational activities on the Big River near the Facility; have aesthetic, recreational, and professional interests in protecting and maintaining the water quality of the Big River; and share the interests of MCW in protecting and restoring Missouri's waters, including the Big River.

14.     MCW's members who participate in activities near and downstream from the Facility are reasonably concerned that BMF's unlawful pollutant discharges have harmful impacts on the Big River, and have or will contribute to the degradation of the water quality of this waterway. These members are particularly concerned that the discharges that exceed effluent limits in the Facility's NPDES permit threaten public health, including their own health when using the river due to exposure to increased levels of E. coli, diminish their use and enjoyment of those waters, and damage the aquatic-dependent wildlife and ecosystems they support.

15.     BMF's repeated failures to monitor and report pollutant discharges reduce the aesthetic and recreational enjoyment these MCW members obtain from their use of the waters downstream from BMF's discharges. Because discharge monitoring reports (when properly submitted to MDNR) are available to the public, BMF's failure to monitor and report its pollutant discharges makes it more difficult for MCW and its members to determine what pollutants BMF is discharging, and in what amounts, which thereby increases these members' exposure or risk of exposure to pollution. This failure to monitor and report also increases the

uncertainty about what pollutants are actually being discharged (thereby decreasing MCW's members' enjoyment of the activities in which they engage in the vicinity of the discharges) and inhibits MCW's ability to investigate, monitor, and ascertain BMF's effluent limitation compliance status.

16.     Moreover, BMF's ongoing failure to properly operate its pollution control equipment has led to the discharge of more pollution than otherwise allowed by the permit; these additional and excessive discharges also reduce the use and enjoyment of the receiving waters MCW's members would otherwise experience.

17.     Based on these concerns, these MCW members' use and enjoyment of the Big River near and downstream of the Facility's discharges have been, are being, and will continue to be diminished due to BMF's repeated and numerous CWA violations. Out of concern for the impact of BMF's pollutant discharges, and out of uncertainty caused by BMF's failure to monitor and report all of its discharges, and failure to properly operate and maintain its pollution control equipment, these MCW members are forced to alter their river usage patterns to avoid traveling on or near the polluted waters or take steps to minimize their exposure to polluted waters. Additionally, these members experience reduced aesthetic, recreational, and spiritual enjoyment when they do use the Big River near the Facility's discharges, and they feel disappointed, frustrated, and unsettled by the pollution.

18.     The pollutants unlawfully discharged by BMF, including E. coli, Ammonia, and BOD, both individually and collectively, are known to pose a risk to human health; degrade the aesthetic value of waters containing them; and impair the ability of fish, amphibians, reptiles, and other aquatic life or water-dependent wildlife to survive and thrive in waters containing those pollutants. By contributing to the degradation of downstream water quality, BMF's

unlawful discharges of those pollutants directly causes or contributes to the injuries experienced by MCW and its members in the vicinity of the Facility.

19.     Upon information and belief, BMF's violations have continued to occur through the date of this complaint.  Unless the requested relief is granted, BMF's violations will continue to injure Plaintiff and its members.

20.     Defendant Byrnes Mill Property, LLC is a Delaware limited liability company with its principal place of business located at 3000 S. Scott St., Des Plaines, Illinois 60018. Byrnes Mill Property, LLC is the legal title owner of the property located at 6856 River Creek Court, House Springs, MO 63051 upon which the Facility is located. Byrnes Mill Property, LLC is identified on Defendants' NPDES permit as the "Owner" of the Facility, and is an owner and/or operator of the Facility. Upon information and belief, Byrnes Mill Property, LLC is a wholly owned subsidiary of Defendant Mobile Home Park Investments, Inc.

21.     Defendant Mobile Home Park Investments, Inc. is an Illinois corporation with its principal place of business located at 3000 S. Scott St., Des Plaines, Illinois 60018. Mobile Home Park Investments, Inc., upon information and belief, wholly owns Defendant Byrnes Mill Property, LLC and is an owner and/or operator of the Facility.

22.     The aforementioned Defendants, individually or collectively, own and/or operate the Facility, which is a mobile home park and is commonly known to the public as Byrnes Mill Farms. The NPDES Permit for the Facility covers discharges from the Facility and its wastewater lagoon.

## FEDERAL STATUTORY BACKGROUND

23.     Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a)(1). The Act

establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife . . ." *Id*. § 1251(a)(2).

24.     Section 301(a) of the Clean Water Act prohibits the discharge of pollutants from a point source to waters of the United States unless the discharge is in compliance with certain enumerated provisions of the Act, including section 402, which establishes the NPDES permit program. *Id.* § 1311(a).

25.     "Discharge of a pollutant" means any "addition of a pollutant to navigable waters from any point source." *Id*. § 1362(12). Pollutant is defined to include solid, chemical, and industrial waste discharged into water. *Id*. § 1362(6). A point source is "any discernible, confined and discrete conveyance," *Id*. § 1362(14), and navigable waters are broadly defined as "the waters of the United States." *Id*. § 1362(7).

26.     The NPDES permitting program established in Section 402 is the primary mechanism for regulating discharges of pollutants. NPDES permits must include conditions that will ensure compliance with the Clean Water Act. 33 U.S.C. § 1342(b)(1)(A). Among other conditions, NPDES permits must contain effluent limitations, which are restrictions on the "quantities, rates, and concentrations" of pollutants discharged to waters of the United States via a point source. *Id*. § 1362(11). These effluent limitations include *technology-based* effluent limitations—established by EPA on an industry-specific basis, regardless of the quality of the receiving water—and *water quality-based* effluent limitations, which are more stringent limitations necessary to meet the water quality standards applicable to the specific waters receiving the discharge. *Id*. § 1311(b)(1)(C), (2)(A); 40 C.F.R. § 122.44(a)(1), (d).

27.      All NPDES permits must include sufficient monitoring provisions and reporting requirements to determine compliance with the effluent limitations and other conditions of the

permit, and must require the permittee to properly operate and maintain the discharging facility at all times. *See* 33 U.S.C. §§ 1342(a)(2); 40 C.F.R. § 122.41(e), (j)-(l).

28.     Once a NPDES permit has been issued, discharges must strictly comply with all of its terms and conditions. Any discharge of pollutants failing to comply with the terms and conditions imposed by a NPDES permit is unlawful. 33 U.S.C. § 1311(a).

29.     While EPA is the primary administrator of the Clean Water Act, section 402 of the Act empowers the EPA to approve State-permitting programs meeting the necessary requirements of the Act. 33 U.S.C. § 1342(b). When State permitting programs become approved by EPA, the federal NPDES program is suspended in that State, but any EPA-approved State permitting program must "at all times be in accordance with" the Clean Water Act and its federal implementing regulations. *Id*. § 1342(c)(2). Missouri has an EPA-approved permitting program, and the MDNR issues NPDES permits pursuant to section 402 of the Clean Water Act and the Missouri Clean Water Law. NPDES permits issued in Missouri are called "Missouri State Operating Permits."

30.     Section 505 of the Clean Water Act includes a citizen suit provision that authorizes any citizen to file suit in federal district court against any person alleged to be in violation of an "effluent standard or limitation." 33 U.S.C. § 1365(a)(1). An effluent standard or limitation includes an NPDES permit or condition thereof. *Id*. § 1365(f)(6). District courts have jurisdiction to enforce the effluent standard and limitation and to impose appropriate civil penalties. *Id*. §§ 1365(a), 1319(d). Additionally, Section 505(d) of the Act authorizes district courts to award litigations costs (including expert witness costs and reasonable attorneys' fees) to prevailing or substantially prevailing citizen-suit plaintiffs. *Id*. 1365(d).

## FACTUAL BACKGROUND

**A.     General Factual Background**

31.     Defendants own and operate the Facility located at 6856 River Creek Court, House Springs, MO 63051. The Facility consists of an 80-acre mobile home park, with several amenities including a community center, private pool, and large commons area and playground. The Facility advertises itself on its website as the premier mobile home community in Jefferson County that provides the quiet serenity of country living along with solutions for the future and progress for the community.

32.     The Facility discharges pollutants from one outfall (numbered 001) from a wastewater lagoon into an unnamed tributary of the Big River, which itself flows into the Big River 0.14 miles from the outfall.

33.     The Big River flows over 145 miles through the State of Missouri, and is navigable by boat. The Big River is listed as "impaired" for the pollutants zinc and cadmium pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d). The Big River is a classified stream with a use designation supporting and protecting whole body contact recreation, aquatic life (warm water habitat and cool water habitat), livestock and wildlife watering, irrigation, and industrial water supply. See Missouri Regulation 10 CSR 20-7.031, Table H.

34.     The Big River also provides habitat for various fish and wildlife, including endangered freshwater mussels such as the Pink Mucket (*Lampsilis abrupta*); the Scaleshell Mussel (*Leptodea leptodon*); and the Spectaclecase (*Cumberlandia monodonta*) as well as nine freshwater mussel species of state conservation concern. These species are particularly vulnerable to Ammonia. The Ammonia effluent limits in BMF's permit are based on Missouri's water quality standard for Ammonia which is designed to protect the designated use of aquatic

life.

35.     According to a 2009 study conducted by the United State Fish and Wildlife Service, most of the freshwater mussel populations in the Big River occur downstream of the Rockford Beach Dam to its confluence with the Meramec River. Rockford Beach Dam is approximately two miles upstream from the Facility, and the confluence of the Big River and the Meramec River is located approximately 8.5 miles downstream from the Facility. Therefore, BMF's discharges are occurring in the stretch of the Big River where most of its freshwater mussels are located.

**B.     BMF's NPDES Permit**

36.     On September 1, 2017, MDNR re-issued Missouri State Operating Permit No. MO-0105856 ("NPDES Permit") to Byrnes Mill Property LLC, authorizing the Facility to discharge domestic wastewater from Outfall 001 into the unnamed tributary of the Big River.

37.     The prior version of the Facility's NPDES Permit was issued on July 30, 2012 and expired on July 31, 2017, but was administratively continued pursuant to 40 C.F.R. § 122.6(d)(1) and Missouri State Regulation 10 CSR 20-6.010(10)(E) until the current NPDES Permit became effective on September 1, 2017.

38.     BMF's NPDES Permit includes, among other conditions, numeric effluent limitations, monitoring and reporting requirements, requirements to report instances of noncompliance with effluent limitations, and the requirement to properly operate and maintain all pollution treatment and control systems.

39.     As relevant to the claims alleged herein, Section A of BMF's NPDES Permit (both the prior version and the current version) includes the following numeric effluent limitations and monitoring requirements applicable at the various outfalls:

| Outfall Number #001 | Previous Effluent Limitations From 7/30/2012 through 9/1/2017 | | | Current Effluent Limitations (Effective after 9/1/2017) | | | Monitoring Requirements | |
|---|---|---|---|---|---|---|---|---|
| | Daily Maximum | Weekly Average | Monthly Average | Daily Maximum | Weekly Average | Monthly Average | Measurement Frequency | Sample Type |
| Flow (MGD) | * | | * | * | | * | Once/week | 24 hr. estimate |
| Biological Oxygen Demand (MGD) | | 65 | 45 | | 65 | 45 | Once/month | Grab |
| TSS (mg/L) | | 110 | 70 | | 110 | 70 | Once/month | Grab |
| E. coli (#/100mL)*** | 630 | | 126 | 630 | | 126 | Once/week** | Grab |
| Ammonia as N (mg/L) (Apri 1 – Sep 30) (Oct 1 – Mar 31) | 5.4 11.1 | | 1.4 2.7 | 4.0 8.9 | | 1.4 2.8 | Once/month | Grab |
| Total Phosphorus (mg/L) | * | | * | * | | * | Once/month | Grab |
| Total Nitrogen (mg/L) | * | | * | * | | * | Once/month | Grab |

\* Monitoring only
\*\* Under the previous version of the NPDES Permit, the frequency was once/month
\*\*\* This parameter is only applicable during the recreational season from April 1 through October 31

40.     According to the MDNR, "The daily maximum limit is the maximum daily value for any daily sample. The monthly average limit is the maximum allowable value for all daily values averaged over one month." MDNR, Guidance for Water Quality and Antidegradation Review Assistance (2010), *available at* http://dnr.mo.gov/env/wpp/permits/docs/part3a-procedures-tbel.pdf. Similarly, a weekly average limit is the maximum allowable value for all daily values averaged over one week.

41.     BMF is required by its NPDES Permit to collect effluent samples at Outfall 001 at the frequency specified by the permit. The type of test to be used and frequency in which it is to be performed are described in Section A of the NPDES Permit.

42.     Section A of BMF's NPDES Permit requires BMF to submit monthly discharge monitoring reports ("DMRs") for the Facility's discharges to MDNR. A DMR is a standardized agency form used "for the reporting of self-monitoring results by permittees." 40 C.F.R. § 122.2. These DMRs must contain the results of any effluent sampling conducted by BMF, and must be submitted to MDNR regardless of whether a discharge has occurred from the Facility. Before

submission to MDNR, a responsible official for BMF is required to sign and certify that information contained in its DMRs is true, accurate, and complete. See NPDES Permit, Section D.13 (citing to 40 C.F.R. § 122.22 and 10 CSR 20-6.010).

**C.    BMF's Violations of Numeric Effluent Limitations for E. coli, Ammonia, and BOD (NPDES Permit Section A)**

43.    The Facility's DMRs and other related records submitted to MDNR demonstrate BMF's history of exceeding its numeric effluent limits for the pollutants E. coli, Ammonia, and BOD.

44.    E. coli is a pollutant caused by human and animal waste. It is used as an indicator of the presence of fecal material in drinking and recreational waters and the presence of disease-causing bacteria, viruses, and protozoans. Such pathogens may pose health risks to people fishing and swimming in a water body. E. coli can cause short-term effects, such as diarrhea, cramps, nausea, headaches, respiratory problems or other symptoms. It may pose a special health risk for infants, young children, and people with severely compromised immune systems. The presence of pathogens in a waterway can cause cloudy water, unpleasant odors, and decreased levels of dissolved oxygen.

45.    Ammonia is one of several forms of nitrogen that exist in aquatic environments. Unlike other forms of nitrogen, which can cause nutrient over-enrichment of a water body at elevated concentrations and indirect effects on aquatic life, ammonia causes direct toxic effects on aquatic life. When ammonia is present in water at high enough levels, it is difficult for aquatic organisms to sufficiently excrete the toxicant, leading to toxic buildup in internal tissues and blood, and potentially death. Environmental factors, such as pH and temperature, can affect ammonia toxicity to aquatic animals.

46.     Biochemical oxygen demand, or BOD, measures the amount of oxygen consumed by microorganisms in decomposing organic matter in stream water. BOD also measures the chemical oxidation of inorganic matter (i.e., the extraction of oxygen from water via chemical reaction). The rate of oxygen consumption in a stream is affected by a number of variables: temperature, pH, the presence of certain kinds of microorganisms, and the type of organic and inorganic material in the water. BOD directly affects the amount of dissolved oxygen in rivers and streams. The greater the BOD, the more rapidly oxygen is depleted in the stream. This means less oxygen is available to higher forms of aquatic life. The consequences of high BOD are that aquatic organisms become stressed, suffocate, and die.

47.     The Big River is a classified stream with a use designation supporting and protecting whole body contact recreation, aquatic life (warm water habitat and cool water habitat), livestock and wildlife watering, irrigation, and industrial water supply. See Missouri Regulation 10 CSR 20-7.031, Table H.

48.     As required by the Clean Water Act, the effluent limitations in BMF's NPDES permit are established at levels intended to ensure that the designated uses of the Big River are maintained. Exceedance of those effluent limitations, therefore, threatens the water's ability to support its designated uses.

49.     BMF has repeatedly exceeded and continues to exceed the numeric effluent limitations contained in its NPDES Permit for E. coli, Ammonia, and BOD. As identified in MCW's Notice Letter, since August 2015, as determined by BMF's own effluent sampling and as reported in its DMRs, BMF has exceeded various numeric effluent limitations at several of its outfalls least 105 times, as shown in the summary table below:

*Table 1: BMF's Effluent Limitation Exceedances (August 2015 – September 12, 2019)*

| Parameter | Number of Discrete Violations |
|-----------|-------------------------------|
| Ammonia | 74 |
| E. coli | 21 |
| BOD | 9 |

The details of each self-reported effluent limitation between August 2015 and September 12, 2019, including the date, outfall, parameter, effluent limitation, and sampling result are included in Table 1 of MCW's Notice Letter, pages 7-7, which is re-alleged and incorporated herein.

50.     Many of BMF's exceedances identified in Table 1 above, and described in more detail in the attached Notice Letter, are violations of a weekly or monthly average effluent limitation. In such instances, BMF is deemed to be in violation of the CWA and its NPDES Permit on each day during the applicable averaging period. *See e.g., United States v. Amoco Oil Co.*, 580 F. Supp. 1042, 1045 (W.D. Mo. 1984).

51.     Moreover, since sending its Notice Letter, MCW has learned of additional exceedances of BMF's effluent limitations. These additional violations are based upon BMF's DMRs from the months of September 12, 2019 through January 22, 2020.  These violations are shown in the summary table below:

*Table 2: BMF's Effluent Limitation Exceedances (September 12, 2019-January 22, 2019)*

| Date | Outfall | Parameter | Effluent Limit | Result |
|------|---------|-----------|----------------|--------|
| Sept. 30, 2019 | 001 | E. coli | 630/100 mL (daily maximum) | 2419.6/100 mL |
| Sept. 30, 2019 | 001 | E. coli | 126/100 mL (monthly average) | 2419.6/100 mL |
| Sept. 30, 2019 | 001 | Ammonia | 4 mg/L (daily maximum) | 12 mg/L |
| Sept. 30, 2019 | 001 | Ammonia | 1.4 mg/L (monthly average) | 12 mg/L |

| Oct. 31, 2019 | 001 | E. coli | 630/100 mL (daily maximum) | 1986.3/100 mL |
| Oct. 31, 2019 | 001 | E. coli | 126/100 mL (monthly average) | 1986.3/100 mL |
| Oct. 31, 2019 | 001 | Ammonia | 8.9 mg/L (daily maximum) | 12 mg/L |
| Oct. 31, 2019 | 001 | Ammonia | 2.8 mg/L (monthly average) | 12 mg/L |
| Nov. 30, 2019 | 001 | Ammonia | 8.9 mg/L (daily maximum) | 12 mg/L |
| Nov. 30, 2019 | 001 | Ammonia | 2.8 mg/L (monthly average) | 12 mg/L |

52.     Although MCW does not at this time have more recent DMRs, upon information and belief BMF has not taken action to improve the systemic flaws in its wastewater treatment system, and thus its effluent limitation exceedances are ongoing, and will continue to occur unless and until they are abated by an order of the court.

**D.     BMF's Monitoring and Reporting Violations (NPDES Permit Section A and Section B(I)(B)(2)(a))**

53.     Section A of BMF's NPDES Permit requires the Facility to monitor the parameters that it is authorized to discharge once per month, once per week, and once per quarter and send the outcomes of these monthly monitoring reports to MDNR.

54.     From March 2015 to September 12, 2019, BMF, on numerous occasions, failed to comply with the monitoring and reporting requirements of the NPDES Permit as more particularly described in Plaintiff's Notice Letter. *See* Table 4, Plaintiff's Notice Letter.

55.     Furthermore, Section B of BMF's NPDES Permit requires BMF to comply with Standard Conditions, Part I dated August 1, 2014, which are incorporated into BMF's NPDES Permit.

56.      Standard Condition, Part I- General Conditions, Section B(2)(a) of BMF's NPDES Permit requires that BMF orally report instances of noncompliance that may endanger

health or the environment within 24 hours of becoming aware of the occurrence, and additionally submit a written report within 5 days. See BMF's NPDES Permit Section B(I)(B)(2)(a).

57.    Upon information and belief, and based upon public records obtained from MDNR, BMF did not comply with the reporting requirements in Section B(I)(B)(2)(a) for any of the effluent limitation violations alleged in this complaint.

58.    BMF's monitoring and reporting violations are repetitive, are ongoing, and will continue to occur unless and until they are abated by an order of the court.

**E.    BMF's Violations of the Requirement to Properly Operate and Maintain its Facilities (NPDES Permit Section B(I)(D)(6)).**

59.    Section B of BMF's NPDES Permit requires BMF to comply with Standard Conditions, Part I dated August 1, 2014, which are incorporated into BMF's NPDES Permit.

60.    Standard Condition, Part I- General Conditions, Section D(6) of BMF's NPDES Permit requires that BMF properly operate and maintain all pollution treatment and control systems within the Facility that are necessary to comply with the effluent limits and other requirements in the NPDES Permit. See BMF's NPDES Permit Section B(I)(D)(6).

61.    The Facility's continued and regular exceedance of allowable effluent limits demonstrates that BMF is not in compliance with this requirement of the permit. Furthermore, the Facility's monitoring and reporting violations and regular failure to report instances of noncompliance indicates that Defendants are not sufficiently maintaining the systems necessary to achieve compliance with their NPDES Permit.

62.    BMF's violations of this permit condition are ongoing, and will continue to occur unless and until they are abated by an order of the court.

## FIRST CLAIM FOR RELIEF
### Violations of Numeric Effluent Limitations
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

63.     Plaintiff incorporates and re-alleges each of the preceding paragraphs.

64.     Section A of BMF's NPDES Permit imposed numeric effluent limitations on the Facility's discharges of Ammonia, E. coli, and BOD, among other pollutants and parameters.

65.     BMF exceeded the numeric effluent limitations contained in its NPDES Permit for Ammonia, E. coli, and BOD at least 104 times between August 2015 and September 12, 2019, as detailed in Table 1 of MCW's Notice Letter, which is incorporated into this complaint.

66.     Furthermore, BMF exceeded the numeric limitations contained in its NPDES permit 10 times between September 12, 2019 and January 22, 2020 as detailed in Table 2 above.

67.     Each occasion upon which BMF exceeded an effluent limitation contained in its NPDES Permit, it violated an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(1), (f)(6)

68.     Each occasion upon which BMF exceeded an effluent limitation contained in its NPDES Permit constitutes a separate and distinct violation of its NPDES Permit and sections 301(a) and 402 of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1342.

69.     Defendants' effluent limitation violations described above have been occurring consistently since at least August 2015, are ongoing, and are likely to recur in the future absent redress from this Court.

70.     BMF's effluent limitation violations alleged above warrant the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to $37,500 per day for each violation before November 2, 2015 and up to $53,484 per violation per day that occurred after November 2, 2015. *See* 33 U.S.C. § 1365(a), 1319(d); 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF
### Violations of Monitoring and Reporting Requirements
### (Violations of 33 U.S.C. §§ 1311(a), 1342)

71.     Plaintiff incorporates and re-alleges each of the preceding paragraphs.

72.     BMF has consistently and repeatedly failed to comply with the monitoring and reporting requirements set forth in Section A of its NPDES Permit. BMF has repeatedly failed to report the values of effluent samples collected, and has repeatedly failed to perform the required analysis for pollutants, as required by Section A of its NPDES Permit. See Notice Letter, Section III and Table IV.

73.     BMF repeatedly failed to provide timely oral notification and written reports to MDNR of any instances of noncompliance that may endanger health or the environment, in violation of Section B(I)(B)(2)(a) of its NPDES Permit.

74.     Each occasion upon which BMF failed to comply with the monitoring and reporting requirements of its NPDES Permit is a violation of an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(1), (f)(6).

75.     Each occasion upon which BMF failed to comply with the monitoring and reporting requirements of its NPDES Permit as alleged above constitutes a separate and distinct violation of its NPDES Permit and sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342.

76.     BMF's monitoring and reporting violations alleged above are ongoing, and there is a reasonable likelihood they will recur in the future absent redress from this Court.

77.     BMF's monitoring and reporting violations alleged above warrant the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to

$37,500 per day for each violation before November 2, 2015 and up to $53,484 per violation per day that occurred after November 2, 2015. *See* 33 U.S.C. § 1365(a), 1319(d); 40 C.F.R. § 19.4.

**THIRD CLAIM FOR RELIEF**
**Violation of the Requirement to Properly Operate and Maintain Pollution Controls**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

78.     Plaintiff incorporates and re-alleges each of the preceding paragraphs.

79.     BMF's repeated violations of the numeric effluent limitations and monitoring and reporting requirements contained in its NPDES Permit, as alleged above, demonstrate that BMF has failed to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit, in violation of Section B(I)(D)(6) of that permit.

80.     Each occasion upon which BMF failed to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit is a separate and distinct violation of BMF's NPDES Permit and sections 301(a) and 402 of the Clean Water Act. 33 U.S.C. §§ 1311(a) and 1342.

81.     Each occasion upon which BMF failed to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit is a violation of an "effluent standard or limitation" under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(1), (f)(6).

82.     BMF's violations of the requirement to properly operate and maintain all pollution treatment and control facilities and systems necessary to comply with its NPDES Permit are ongoing, and there is a reasonable likelihood they will recur in the future absent redress from this Court.

83. BMF's violations of the requirement to properly operate and maintain all pollution treatment and control facilities and systems alleged above warrant the imposition of declaratory and injunctive relief and the assessment of civil penalties in the amount of up to $37,500 per day for each violation before November 2, 2015 and up to $53,484 per violation per day that occurred after November 2, 2015. *See* 33 U.S.C. § 1365(a), 1319(d); 40 C.F.R. § 19.4.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

84. Declare that BMF has violated and is continuing to violate specified sections of the Facility's NPDES Permit and sections 301(a) and 402 of the Clean Water Act;

85. Issue an injunction ordering BMF to come into immediate compliance with the terms and conditions of its NPDES Permit and the Clean Water Act, and to take such action as may be necessary to discontinue the unlawful discharge of pollutants into the tributary of the Big River that violate the Facility's NPDES Permit and the Clean Water Act;

86. Order BMF to pay an appropriate civil penalty of up to $37,500 per day for each violation before November 2, 2015 and up to $53,484 per violation per day that occurred after November 2, 2015. *See* 33 U.S.C. § 1365(a), 1319(d); 40 C.F.R. § 19.4.;

87. Issue an order awarding Plaintiff its costs of litigation, including its reasonable attorney and expert witness fees, as authorized by Section 505(d) of the Clean Water Act. 33 U.S.C. § 1365(d); and

88. Award such other relief as this Court deems just and proper.

Dated this 29th day of January, 2020.

Respectfully submitted,

s/ *Robert H. Menees*
Robert Menees, Bar No. 62367(MO)
Bruce A. Morrison, Bar No. 38359(MO)
Sarah Rubenstein, Bar No. 48874(MO)
Great Rivers Environmental Law Center
319 N. Fourth St., Suite 800
St. Louis, MO 63102
Tel: (314) 231-4181
Fax: (314) 231-4148
Email: bobmenees@greatriverslaw.org
          bamorrison@greatriverslaw.org
          srubenstein@greatriverslaw.org

COMPLAINT for Injunctive and Declaratory Relief                                      22